UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMIE C. PAMPKIN, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:23-cv-00631-SNLJ |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

On May 9, 2023, Petitioner Jimmie C. Pampkin ("Pampkin") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255 [Doc. 1]. This Court then ordered the United States to show cause why the relief requested in Pampkin's motion should not be granted. The government filed a response on June 26, 2023 [Doc. 3], and the petitioner filed a "response" on August 7, 2023 [Doc. 4]. Based on the reasons set forth below, this Court will dismiss Pampkin's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

**I. STATEMENT OF FACTS**

On January 22, 2020, Pampkin was charged in a three-count superseding indictment with possession with the intent to distribute fentanyl and aiding and abetting possession with the intent to distribute fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 ("Count I");

possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c) ("Count II"); and possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g) ("Count III") in 4:19CR00198 SNLJ.  Crim. Case, Doc. 107, 108.  On October 28, 2020, Pampkin pled guilty to Counts I and II of the superseding indictment.  Crim. Case, Doc. 145.

Pursuant to the guilty plea agreement, in exchange for Pampkin's plea to Counts I and II, the United States agreed to dismiss Count III at the time of sentencing. In addition, the parties agreed "that either party may request a sentence above or below the U.S. Sentencing Guidelines range . . . ultimately determined by the court."  Crim. Case, Doc. 146, ¶ 2.  Pampkin conceded the following facts forming the basis for the guilty plea:

> On March 2, 2019, co-defendant Demarcus Chappel was driving a Dodge Challenger at a high rate of speed on the shoulder of Interstate 70 in the City of St. Louis. The defendant was the back seat passenger in the car and co-defendant Terran Vann was in the front passenger seat. The Challenger almost struck the side of an unmarked police vehicle. Officers used spike strips to attempt to stop the Challenger, however, Demarcus Chappel continued speeding down Highway 70 before stopping on an exit ramp. After Challenger stopped, all three of the occupants got out of the car and ran. An officer ordered the men to stop, however, they continued to flee.
>
> Officers observed Demarcus Chappel running with guns in each of his hands. Vann also had a firearm in his possession. Chappel and Vann discarded the firearms on a grassy area near the overpass at Adelaide Avenue and Highway 70. The defendant, Demarcus Chappel, and Terran Vann were all taken into custody and brought back to the car and searched incident to arrest. Chappel had a clear plastic bag containing 105 clear capsules in his right front pants pocket, analyzed to contain 9.05 grams of fentanyl. Vann had a clear plastic bag containing 36 clear capsules in his left front pants pocket, analyzed to contain 3.13 grams of fentanyl. Vann also had a small black .40 caliber magazine in a satchel that was across his chest.

> The defendant had a clear plastic bag containing 37 clear capsules with white powder, in his right front pants pocket, analyzed to contain 3.17 grams of fentanyl. The defendant also had multiple round white tablets and three live cartridges in a satchel he was carrying.
>
> One of the detectives seized the following firearms from the grassy area: (1) a Glock 27 .40 caliber handgun loaded with 25 live cartridges in an extended magazine and an additional live cartridge in the chamber; (2) a Glock 23Gen4 .40 caliber firearm containing 29 live cartridges in a black drum magazine and an additional live cartridge in the chamber; and (3) a Glock 23 .40 caliber firearm containing 23 live cartridges in an extended magazine and an additional live cartridge in the chamber.
>
> At trial, the government would present testimony that it is common for drug dealers to carry weapons in order to protect their narcotics and the proceeds from drug sales. Furthermore, the defendant intended to distribute some or all of the fentanyl found in his possession

Crim. Case, Doc. 146, ¶ 4.

Pampkin appeared before this Court for sentencing on June 7, 2021. This Court noted that, to determine that the drug quantity attributable to Pampkin was least eight grams and less than 16 grams of fentanyl, the Court would have to "combine the amounts of fentanyl that were seized from the three Defendants in the car." Sentencing Hearing Transcript ("Sent. Tr."), Crim. Case, Doc. 191, p. 7. This Court made specific findings about the jointly undertaken criminal activity:

> Now, I've reviewed the evidence submitted very, very closely, and it is clear to the Court, based on all of that evidence, that this was a joint enterprise, a possession of fentanyl with the intent to distribute by all three of these Defendants, and I agree with the Government's position in all respects in that matter.
>
> And I would also observe that the Defendant, as set out in the presentence report, frequently posted on Facebook that he was selling narcotics and photographed himself with large sums of cash and firearms, and so because of that, it is clear to the Court – really based [on] more than just a preponderance of the evidence. I think it's at least clear and convincing

3

> evidence that the Defendant was in cahoots, in other words, or acting concurrently with the two Codefendants, Chappel and Vann, acting with a common purpose to sell fentanyl and also to possess firearms in the course of the sale of narcotics.

Sent. Tr., pp. 7-8.  Pampkin objected to the Court's finding.  Sent. Tr., p. 8.  After addressing the parties' arguments as to the guidelines calculations, this Court found that Pampkin's guideline range was 21 to 27 months on Count I.  Sent. Tr., pp. 9-10.  This Court found the guidelines range on Count II to be five years consecutive to the term of imprisonment imposed on Count I.

The United States then presented evidence in support of its request for an upward variance pursuant to Title 18, United States Code, Section 3553(a).  Specifically, the government requested the District Court to consider the nature and circumstances of the offense, Pampkin's personal history and characteristics and the seriousness of his past conduct, the likelihood that Pampkin would recidivate, and the ongoing danger to the community.  Crim. Case, Doc. 164, pp. 29-30.  After a lengthy sentencing hearing, during which the United States presented evidence that Pampkin shot two people on October 6, 2017.  This Court found that Pampkin was a danger to the community and that Pampkin had been "involved in guns and drugs and shootings, whether directly or indirectly for several years."  Sent. Tr., p. 53.  This Court recognized the argument made by Pampkin that the conduct being considered was uncharged conduct, but that it had been proven by clear and convincing evidence.  Based upon Pampkin's danger to the community, an upward variance to 84 months' imprisonment was imposed on Count I.  A sentence of 60 months was imposed on Count II to run consecutively to the term of imprisonment

4

imposed on Count I, for a total of 144 months.

On June 21, 2021, Pampkin filed a notice of appeal.  Pampkin appealed the amount of fentanyl for which he was held responsible.  Pampkin also appealed the sentence, arguing that this Court abused its discretion in varying upward based upon the evidence that Pampkin shot two people.  On July 1, 2022, the Eighth Circuit Court of Appeals issued an unpublished per curiam opinion affirming Pampkin's sentence and judgment.  Pampkin timely filed his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.

## II.  PRINCIPLES GENERALLY APPLICABLE TO § 2255 MOTIONS

In general, to state a claim for relief under 28 U.S.C. § 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the maximum allowable by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962).  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction.  *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964).  Title 28 U.S.C. § 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Instead, a § 2255 cause of action is intended only to correct an error which rises to the level of a fundamental defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427.

5

Claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly addressed in a § 2255 motion. *United States v. Looking Cloud*, 419 F.3d 781, 788-89 (8th Cir. 2005).

### III.  DISCUSSION

Pampkin raises three grounds for post-conviction relief. First, he argues that this Court erred in considering uncharged misconduct to vary upward from the guidelines calculations. Second, he asserts that he received ineffective assistance of counsel. Third, Pampkin claims that there was no evidence that he possessed a firearm.

**A. Ground One: Pampkin's argument that the Court erred by considering uncharged misconduct in varying upward is not cognizable in a post-conviction motion because he raised the argument on direct appeal and his sentence was affirmed.**

Pampkin asserts that the Court erred in varying upward based upon uncharged misconduct. This is the same argument that Pampkin made on direct appeal. "It is well-settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981); *see also Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam); *Bear Stops*, 339 F.3d at 780. The law of the case doctrine requires that the decisions by the Eighth Circuit, handed down on direct appeal, remain

undisturbed in subsequent proceedings. *Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008). Because the Eighth Circuit affirmed this Court's consideration of the 18 U.S.C. § 3553(a) factors in imposing an above-guideline sentence, Pampkin is foreclosed from making the same argument here.

**B. Ground Two: Pampkin's attorney provided effective assistance, and he suffered no prejudice.**

Pampkin alleges that he received ineffective of counsel because (1) counsel failed to respond to the United States' objections to the PSR; (2) failed to interview witnesses, (3) failed to get a "mental screening," (4) allowed Pampkin to plead guilty to 18 U.S.C. § 924(c); and advised Pampkin that a conviction under 18 U.S.C. § 924(c) did not qualify for the First Step Act. Pampkin fails to provide any support for the allegations and has not demonstrated any prejudice he faced as a result of the alleged deficient performance. Accordingly, this Court will deny Pampkin's claim for relief based on ineffective assistance of counsel.

*1. Legal standard for ineffective assistance of counsel claims.*

To state a claim for ineffective assistance of counsel, Pampkin must establish that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (movant "must show that his counsel's performance was both deficient and prejudicial."). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id*. at 689. The inquiry must be

whether, considering all the attendant circumstance, the acts or omissions identified by the movant fell outside the range of professionally competent assistance. *Id*. at 690.

"In order to demonstrate prejudice where, as here, a petitioner challenges the validity of his guilty plea, the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To establish prejudice regarding a sentence, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would have received a lesser sentence than he did. *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (citing *Puckett v. United States*, 556 U.S. 129, 142 n. 4 (2009)).

2. ***Pampkin fails to show that, but for trial counsel's errors, he would not have pled guilty and would have gone to trial.***

Pampkin claims that he "wanted to plea to just an 841 possession and take the other gun charges to trial," but his lawyer told him there was no way he could do that. Pampkin's assertion is completely contrary to the record in the case. On October 7, 2020, the Court conducted a Zoom hearing during which Pampkin, and his lawyer were present. Pampkin expressed concerns about the plea agreement. Pampkin said that he was afraid that if he didn't sign the plea agreement, the attorney for the government would punish him "through the Court." Crim. Case, Doc. 188, pp. 4, 5. This Court explained that Pampkin would be given more time to consult with his attorney before pleading guilty. Crim. Case, Doc. 188, p. 5. This Court explained that the prosecutor would not "punish"

8

Pampkin, because it was his choice to go to trial: "That's your election. You can either plead guilty or you can go to trial. That's not her doing anything." Crim. Case, Doc. 188, p. 5. Pampkin replied, "I didn't want her to snatch my plea agreement away. It's okay. I'll plead guilty to what I signed." Crim. Case, Doc. 188, p. 5.

There was no indication whatsoever that Pampkin's attorney had told him that he could not go to trial, as Pampkin asserts. The Court said, "I want to make sure that your lawyer has addressed all your concerns and answered all your questions," and the Court continued the guilty plea hearing. Crim. Case, Doc. 188, p. 6. The Court advised, "Listen again, Mr. Pampkin, I do not want you to plead guilty to something that you're not guilty of, and I want to make sure that all your rights are protected and that you know what you're doing. And that you're going to enter a plea if that's what you decide to do knowingly and voluntarily and without any coercion. See what I mean?" Crim. Case, Doc. 188, p. 7. Pampkin replied, "Yes, sir." In fact, this Court did not, and would not, accept Pampkin's plea at that time. Crim. Case, Doc. 188, pp. 7-8. Pampkin was advised that he did not have to plead guilty, and that the prosecutor was not going to punish him if he went to trial, but that going to trial was the option with which Pampkin was presented. Crim. Case, Doc. 188, p. 9.

At the beginning of Pampkin's change of plea hearing on October 28, 2020, the Court asked whether the "complications" had been resolved. Pampkin said, "Yes, sir." The Court asked Pampkin's lawyer, David Bruns what had happened between the earlier hearing and the date of the change of plea. Bruns responded, "Judge, I have written him a letter. I have called him, I've talked to him on the phone. I have also talked to him on

9

video. I also set up that he had contact with his uncle . . . who is sort of – certainly involved in the antiviolence up in St. Louis. So he's sort of an expert on some of these things. I have had conversations with the Government and relayed the contents of those conversations with Mr. Pampkin." Transcript of Change of Plea Hearing ("Plea Tr.") Crim. Case, Doc. 189, pp. 6-7. This Court ensured that Bruns had answered all Pampkin's questions and addressed all his concerns. Pampkin said he had. This Court affirmed that Pampkin was satisfied with the way Bruns had handled the case and that he was ready to proceed to plead guilty. Plea Tr., p. 7. This Court asked, "by pleading guilty you're giving up your right to trial by jury. Are you sure that's what you want to do." Pampkin replied, "Yes, sir." Plea Tr., p. 7. On multiple occasions throughout the proceedings, Pampkin demonstrated his willingness and ability to speak up when he was confused about the proceedings or needed additional time to consider his options. There is no evidence from the extensive conversations the Court had with Pampkin and Bruns regarding Pampkin's desire to plead guilty, that Pampkin wanted to go to trial. Pampkin never said he wanted to go to trial. Because there is no reasonable probability that Pampkin would have gone to trial on the 18 U.S.C. § 924(c) charge, Pampkin's claim of ineffective assistance of counsel fails.[1] *Hill v. Lockhart*, 474 U.S. at 59.

3. ***Pampkin claim that counsel was ineffective for failing to object to the United States' objections to the PSR fails because the record shows that counsel did object.***

Pampkin claims that Bruns failed to respond to the United States' objections to the

---

[1] Pampkin asserts that he wanted to plead guilty to the drug charge, therefore, any claim of ineffective assistance of counsel as it relates to Count I is barred.

10

PSR. That is not true. After the Court sustained the United States' objections to the PSR as to the calculation of the drug quantities, Bruns stated, "I am still objecting to or I am objecting to your findings." Sent. Tr., p. 8. Pampkin's attorney made the objection at the time of sentencing and appealed the court's ruling on the United States' objections to the PSR.

4. ***Pampkin fails to identify any witnesses that counsel should have spoken to, but did not, or the content of the expected testimony, therefore Pampkin cannot succeed on this ground.***

Pampkin also contends that Bruns failed to interview witnesses. While Pampkin is entitled to a liberal construction of his pleadings, his claim "lacks sufficient specificity under even the most liberal pleading requirements," *see Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001), because he fails to identify any witnesses that Bruns should have interviewed or how those witnesses may have been helpful in his case. Pampkin's failure to provide the identity and affidavits of the expected testimony of alleged exculpatory witnesses is fatal to a claim that Bruns was ineffective. *See Armstrong v. Kemna*, 534 F.3d 857, 867-68 (8th Cir. 2008) (quoting *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) ("[o]rdinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony . . . would be fatal to an ineffective assistance of counsel claim") (citations omitted)).

Additionally, when the Court asked about the representation Pampkin received from his attorney, Pampkin did not mention that were witnesses that should have been interviewed:

11

| | |
|---|---|
| THE COURT: | [A]re you satisfied with the way your lawyer has handled your case? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Has he investigated the case to your satisfaction? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Has he done everything you've asked him to do? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you have any gripes or complaints whatsoever? |
| THE DEFENDANT: | No, sir. |

Plea Tr., p. 6. Pampkin himself told the Court that he was satisfied with his lawyer, and that his lawyer had done everything he was asked to do.

5. ***Counsel's failure to request a psychological evaluation of Pampkin was not ineffective assistance of counsel because there was no indication during the proceedings that Pampkin did not understand the proceeding or was mentally impaired.***

Pampkin suggests that counsel was ineffective because he failed to get "a mental screening." The PSR indicates that Pampkin has been diagnosed with Bipolar Type 1 Disorder and would benefit from mental health treatment. PSR, pp. 12-13. While it is true that Pampkin's attorney did not request a psychological evaluation before Pampkin's guilty plea, Pampkin does not provide any information that would have indicated the need for such an evaluation. Although the PSR reveals a childhood history of oppositional deficient disorder, bipolar disorder, schizophrenia, and ADHD; and an adult diagnosis of bipolar disorder; Pampkin did not report that he was experiencing any

12

mental health issues at the time he spoke with the probation officer.  PSR, pp. 12-13.  The PSR offers no suggestion that Pampkin failed to comprehend his situation or behaved in an inappropriate manner.

Pampkin made multiple appearances before the Court during the pendency of the case.  Pampkin made his initial appearance on March 22, 2019, in front of United States Magistrate Judge David D. Noce, and attorney Melissa Goymerac appeared on his behalf.  Crim. Case, Doc. 23.  A detention hearing was held in front of Judge Noce and Pampkin was represented by attorney Jason Korner.  Crim. Case, Doc. 35.  On April 3, 2019, Pampkin appeared with attorney Korner and was arraigned.

On August 29, 2019, Pampkin filed a pro se motion for new counsel.  Crim. Case, Doc. 72.  Pampkin appeared in front of United States Magistrate Judge Shirley P. Mensah on September 11, 2019, a lengthy hearing was held, and Judge Mensah spoke Pampkin and considered what he had to say.  Following the hearing, Judge Mensah granted Pampkin's *pro se* motion for new counsel.

The United States filed a superseding indictment in Pampkin's case on January 22, 2020.  Pampkin appeared in court with attorney David Bruns in front of Judge Mensah and was arraigned on January 31, 2020.  On February 12, 2020, an evidentiary hearing was held on Pampkin's motions to suppress evidence and statements.  Pampkin was present with defense counsel, Bruns, during the hearing which lasted approximately one hour.  Crim. Case, Doc. 117.  At no time did Pampkin give any indication that he could not comprehend the proceedings, nor did his behavior suggest that a psychological examination was warranted.

13

On October 7, 2020, the Court started a change of plea hearing over Zoom, and Pampkin indicated he did not want to proceed with the plea at that time. This Court spoke with Pampkin during the hearing and Pampkin clearly understood his rights and what was happening. This Court allowed Pampkin additional time to speak with his attorney to determine whether he wanted to plead guilty or proceed to trial. Crim. Case, Doc. 188.

On October 28, 2020, Pampkin appeared before this Court via Zoom for a change of plea hearing. The Court questioned Pampkin about a variety of topics, including his mental health. Pampkin told the court that he had ADHD and did not mention any other health conditions. Plea Tr., pp. 5-6. The Court inquired, "Well, the reason I'm asking these questions is I have to make sure there's nothing about your physical health or your mental health that is in any way affecting your decision to enter this plea of guilty. Do you understand that?" Pampkin replied, "Yes, sir." The Court asked whether there was anything about his mental health that was affecting his decision. Pampkin replied, "No, sir." Plea Tr., p. 6. Pampkin fails to offer a single instance in which he expressed confusion, answered any question inappropriately, or otherwise gave any indication to his attorney, the government's attorney, or the Court that a psychological evaluation was warranted.

Pampkin is requesting this Court to find that Bruns provided constitutionally defective assistance of counsel by failing to request a psychological evaluation. Pampkin is not entitled to relief because he fails to meet his burden to demonstrate that Brun's decision not to request the evaluation was patently unreasonable. Pampkin exhibited

14

appropriate behavior in each of the many times that he appeared in court in person and via Zoom during the pendency of the case. He appeared in front of two United States Magistrate Judges and a probation officer writing the presentence investigation report and no one found a reason to pursue a mental health evaluation.

6. ***Pampkin's claim that counsel was ineffective for failing to argue to the Court that uncharged misconduct should not be considered at sentencing fails because counsel made the argument on three occasions, including appealing the issue to the Eighth Circuit Court of Appeals.***

Pampkin also argues that Brims was ineffective for failing to argue to the court that uncharged misconduct should not have been considered at sentencing. Pampkin cannot show that Bruns was ineffective for failing to make the argument, because Bruns did make the argument. Bruns objected to the paragraphs in the PSR that outlined the facts of the uncharged misconduct. Sent. Tr., pp. 4-6; Crim. Case, Doc. 169. After the United States presented evidence of the uncharged misconduct, Bruns urged the court to disregard the evidence of uncharged misconduct in determining Pampkin's sentence. Sent. Tr., pp. 49-50. After sentencing, Bruns appealed Pampkin's sentence, arguing that the district court erred in considering the evidence that Pampkin shot two people, because the district court did not find the evidence beyond a reasonable doubt. Pampkin cannot now claim that Bruns failed to make the argument that counsel made on at least three separate occasions.

7. ***Pampkin's claim that counsel was ineffective for telling him that he would be entitled to First Step Act relief upon a plea of guilty to 18 U.S.C. 924(c) fails to state a claim for relief.***

Assuming, arguendo, that Bruns told Pampkin he would be entitled to First Step Act

15

relief, Pampkin fails to allege and has not demonstrated that he was prejudiced. Additionally, Pampkin has not specifically alleged that eligibility for First Step Act relief impacted his decision to plead guilty in the case. Presumably, Pampkin's claim regarding the First Step Act advice relates to the sentence that he will serve because the First Step Act provides opportunities for qualified inmates to receive reductions in their sentences. *See* 18 U.S.C. § 3632(a). The act involves multiple factors including each defendant's history and characteristics and participation in rehabilitation programs. *See* www.ojp.gov/First-Step-Act-of-2018-Risk-and-Needs-Assessment-System. No defendant automatically qualifies for a sentence reduction under the act. To establish prejudice regarding the sentence, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would have received a lesser sentence than he did. *Jeffries*, 721 F.3d at 1014. The calculus is not whether Pampkin would qualify for good time credit or any time off whatsoever once he was in the Bureau of Prisons. Even if counsel erred by telling Pampkin that he was eligible for the First Step Act, there is no reasonable probability that he would have received a lesser sentence. Pampkin fails to state a claim for relief on this ground.

**B. Ground Three: Pampkin's claim that there was no evidence that he possessed a firearm to support a conviction under 18 U.S.C. § 924(c) conviction is barred by his written guilty plea and the guilty plea hearing during which he admitted to the elements of the offense.**

Pampkin claims there was no evidence that he possessed a firearm to support his conviction under 18 U.S.C. § 924(c). Pampkin admitted that he possessed a firearm in furtherance of a drug trafficking crime in his guilty plea. Plea. Tr., pp. 17-18. It is well-

16

established case law that "[a] guilty plea waives all defects except those that are 'jurisdictional.'" *United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008); *Houser v. United States*, 508 F.2d 509, 516 (8th Cir. 1974). "Stated differently, a valid guilty plea forecloses an attack on a conviction unless 'on the face of the record the court had no power to enter the conviction or impose the sentence.'" *Walker v. United States*, 115 F.3d 603, 604 (8th Cir.1997) (quoting *United States v. Vaughan*, 13 F.3d 1186, 1188 (8th Cir.1994)). In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court reaffirmed the principle, first recognized in *McMann v. Richardson*, 397 U.S. 759 (1970), that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett*, 411 U.S. at 267. Pampkin admitted that he possessed a firearm in furtherance of a drug trafficking crime, he cannot now claim that he did not.

## IV. HEARING NOT NECESSARY

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Allen v.*

*United States*, 854 F.3d 428, 433 (8th Cir. 2017) (a § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact) (internal citation omitted).  This Court holds that Pampkin is not entitled to an evidentiary hearing because some his claims, even if true, would not entitle him to relief; and the rest of the claims are contradicted by the record

## V.  CONCLUSION

For the foregoing reasons, this Court will deny Pampkin's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Pampkin has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 11th day of July, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE